**Entered on Docket**
**November 21, 2018**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: November 21, 2018

_William J. Lafferty, III_
**William J. Lafferty, III**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | Lead Case No. 12-41283 WJL<br>Chapter 13 |
| Stephen G. Opperwall, | Adversary Proceeding No. 18-04090 |
| Debtor. | |

| | |
|---|---|
| Stephen G. Opperwall, | |
| Plaintiff, | |
| v. | |
| Bank of America, N.A.,<br>Brian T. Moynihan, David E.<br>Pinch, Mark Joseph Kenney,<br>Severson & Werson, P.C., | |
| Defendants. | |

**MEMORANDUM OF DECISION REGARDING MOTION TO ABSTAIN AND/OR REMAND, MOTION TO DISMISS, AND MOTION FOR SANCTIONS**

These matters came for hearing on August 8, 2018 and September 5, 2018 on (a) the Motion to Dismiss Adversary Proceeding ("Motion to Dismiss"), filed by Bank of America, N.A. ("BANA"), (b) the Motion for Sanctions, also filed by BANA, and (c) the

Cross-Motion by Plaintiff to Remand and/or Abstain (the "Motion to Abstain/Remand") filed by Stephen Opperwall ("Opperwall"). Bernard A. Kornberg of the law firm Severson & Werson, P.C. appeared for BANA; Opperwall appeared for himself. At the conclusion of the September 5 hearing, the Court took the matters under submission, subject to requesting further information from BANA with respect to its transmittal to Opperwall of the Motion for Sanctions in the manner required by Federal Rule of Bankruptcy Procedure 9011(c) (for convenience, any Rule of the Federal Rules of Bankruptcy Procedure will be referred to as "Rule"), and with respect to the calculation of attorneys' fees sought pursuant to the Motion for Sanctions; after further consideration, the Court is satisfied that it has sufficient information to make a ruling, and does not need any further affirmative information concerning the Motion for Sanctions, though the Court will allow Opperwall a short opportunity to comment only with respect to the amount of fees requested in the Motion for Sanctions.[1]

For the reasons stated below, the Court determines (a) that it has jurisdiction to determine the Motion to Dismiss and the Motion for Sanctions, (b) that there is no just cause for the Court to abstain from hearing the Motion to Dismiss (or the Motion for Sanctions) or to remand back to state court the adversary proceeding that is the source of those motions, (c) that the Court

---

[1]As noted in Section II.D, *infra*, an order on the above motions will follow ten (10) days after entry of this Memorandum of Decision to allow Opperwall a brief window of time to file an opposition to the amount of sanctions requested by BANA.

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 2 of 36

should grant the Motion to Dismiss, without leave to amend, and (d) that the Court should grant the Motion for Sanctions.[2]

---

[2]Since this matter was commenced in state court, the complaint did not reference Plaintiff's position regarding this Court's authority to enter a final order in the matter, or Plaintiff's consent to such judicial power, as referenced in Bankruptcy Local Rule ("BLR") 7008-1. For similar reasons, the Motion to Dismiss also did not refer to the Court's judicial power or Defendant's consent to the Court's entry of a final order. The Court raised this issue at the September 5 hearing, and indicated that there may not have been a simple uniform answer to the question of the Court's judicial power to enter final orders in these matters, in light of the different sorts of issues presented (jurisdiction, abstention and remand, dismissal under Rule 12(b)(6), and sanctions under Rule 9011). In response to the Court's inquiry, BANA indicated that it would consent to the Court's entry of final orders disposing of these matters, while Opperwall indicated that he would not so consent. After review and consideration, the Court continues to believe that the question of this Court's judicial power to enter final orders is complex in these matters, and has determined to style its disposition of these matters as a final order, for at least two reasons. First, Opperwall, the party who indicated that he would not consent to this Court's entry of a final order, or orders, never addressed the question of this Court's judicial power with respect to these matters, but merely made the blanket assertion that this Court lacked jurisdiction to entertain these matters for any purpose. The Court disposes of that assertion in Section II.A, *infra*. Second, as explained in greater depth at Section II.C below, though the parties disagree as to the level of factual difference between suits for the purpose of claim preclusion, in applying that doctrine the Court does not believe that it is making any findings of disputed facts—rather, the Court is determining that the "new facts" and "new parties" alleged by Opperwall, and that he believes take this new action out of the realm of claim preclusion, are simply not relevant to the claim preclusion analysis as a matter of law. Therefore, the disposition of this matter does not raise any issues respecting findings of disputed facts that, were this Court to treat this matter as one in which it lacked judicial power to enter a final order, would require a reviewing court to apply a less deferential standard of review concerning any such findings. *Executive Benefits Life Ins. Agency, Inc. v. Arkinson (In re Bellingham Ins. Agency, Inc.)*, 573 U.S. 25 (2014); *see* BLR 8003-1. In any event, if any party asserts that the Court lacked the judicial power to enter a final order on some or all of these matters, and does not consent to the Court's entry of an order, the party should act in accordance with the procedures set forth in BLR 8014-1, and urge

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 3 of 36

# I.  BACKGROUND

Because the disposition of these matters is dictated primarily by the past actions of the parties in Opperwall's now-completed chapter 13 case (the "Bankruptcy Case"), and the prior state court action that was removed to this Court, and the Court's prior determinations with respect to those matters, the relevant background to this case is largely a procedural history.

## A.  The Chapter 13 Case

On February 11, 2012, Opperwall filed a petition for chapter 13 bankruptcy relief, commencing the Bankruptcy Case.  Bankruptcy Case, Docket No. 1.  Creditor BANA filed a proof of claim in the aggregate amount of $952,133.91, representing amounts due under a note secured by a first priority deed of trust against Opperwall's residence.  Bankruptcy Case, Proof of Claim No. 13.  The Proof of Claim further specified that Opperwall's regular monthly payments were $5,933.27 per month, and that there were aggregate pre-petition arrears of $59,720.94.

On April 14, 2012, Opperwall submitted an amended chapter 13 plan (Bankruptcy Case, Docket No. 32).  The plan proposed monthly mortgage payments of $2,724.66 per month, and explained that the lower monthly payments were part of a loan modification to be obtained pre-confirmation:

> This plan assumes that Debtor will obtain, prior to
> confirmation of this plan, a loan modification agreement
> on the first mortgage on Debtor's principal residence
> which allows Debtor to pay $2,724.66 per month to pay the
> monthly payments obligations which come due each month
> for the entire 60 month duration of this plan.

the reviewing Court to treat the Court's findings of fact and conclusions of law as proposed findings and conclusions.

-4-

Bankruptcy Case, Docket No. 46. Opperwall did not provide any
further explanation or background regarding his belief (or
assumption) that a loan modification would be obtained prior to
plan confirmation. The Court, hearing no objections from BANA
regarding plan treatment, entered a Signed Order Confirming Chapter
13 Plan ("Confirmation Order"). Bankruptcy Case, Docket No. 71.
Thereafter, Opperwall made payments according to his confirmed
plan.

**B.   Bank of America's Motion to Dismiss Chapter 13 Case**

On August 15, 2014, almost two years after entry of the
Confirmation Order, BANA filed a Motion to Dismiss Opperwall's
Bankruptcy Case ("Motion to Dismiss Case"), based on Opperwall's
failure to make the contractual monthly mortgage payments of
$5,933.27. Bankruptcy Case, Docket No. 91. While acknowledging
that Opperwall had been paying $2,724.66 per month to BANA as
required by his confirmed plan, BANA denied having agreed to a pre-
confirmation loan modification -- and therefore alleged a massive,
and growing, default by Opperwall that, per BANA, required
dismissal of the Bankruptcy Case. On October 16, 2014, this Court
denied the Motion to Dismiss Case, finding that (1) the confirmed
plan required only monthly payments of $2,724.66 to BANA during the
course of the plan; and (2) the plan, which was appropriately
noticed to creditors (including BANA), bound all creditors upon
confirmation, during the pendency of the Bankruptcy Case. The
Court also noted, however, that the plan did not, by its terms,
appear to create a loan modification between Opperwall and BANA, or
in any way modify BANA's underlying claim. The Court also rejected

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 5 of 36

any argument that BANA's acceptance of reduced payments called for under the plan constituted a loan modification.  Therefore, the Court also noted that while dismissal of the Bankruptcy Case would not be appropriate, the effect of the reduced plan payments, without any adjustment of BANA's claim, would be to create a large deficiency with which Opperwall would have to contend at the end of his plan.

**C.   The First Adversary Proceeding**

On September 29, 2014, while consideration of BANA's Motion to Dismiss Case was pending but that motion had not been determined, Opperwall commenced a civil action in California state court against BANA. Contrary to the matter of fact and simple language of his confirmed bankruptcy plan, Opperwall's state court claim asserted that BANA had in fact agreed to give Opperwall a loan modification prior to his filing for bankruptcy relief.  Opperwall further asserted that BANA's failure to comply with the agreed-upon loan modification and subsequent initiation of foreclosure proceedings, contrary to their alleged agreement, had forced Opperwall to file for bankruptcy relief.  Opperwall also asserted that he "established and documented the modification agreement" between himself and BANA in his initial chapter 13 case filings, and sought unspecified damages from BANA for its alleged breach of this agreement.

On October 29, 2014, BANA timely removed Opperwall's state court action to this Court, First AP, Docket No. 1, and answered Opperwall's complaint.  First AP, Docket No. 4.  On December 1, 2014, Opperwall filed a Motion to Abstain and Remand the Adversary

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 6 of 36

Proceeding on the basis that the state court claims were non-core and that the Court lacked jurisdiction to hear the claims. First AP, Docket No. 10. On January 20, March 11, April 7, and April 15, 2015, the Court conducted hearings on the matter with multiple supplemental briefs filed by both parties in the interim, addressing, principally, the Court's jurisdiction to adjudicate matters in the First AP, the nature of the claims asserted in the First AP (including whether the claims were pre-petition or post-petition claims) and the potential preclusive effect of the Confirmation Order in the Bankruptcy Case.

On May 8, 2015, pursuant to the discussions in the hearings referenced in the preceding paragraph, and essentially at the direction of the Court, Opperwall filed a Memorandum Attaching Proposed/First Amended Complaint ("Amended Complaint"). First AP, Docket No. 44. On October 14, 2015, at the conclusion of another hearing, the Court denied Opperwall's Motion to Abstain or Remand. First AP, Docket No. 47. At this hearing, the Court also deemed Opperwall's Amended Complaint to be the operative complaint for the purposes of the First AP, and set a schedule for BANA to file either a motion to dismiss or a motion for summary judgment. On October 21, 2015, the Court entered an Order Denying Motion to Remand Action to Superior Court of Alameda County ("Order Denying Motion to Remand"), enumerating the actions taken at the October 14 hearing. First AP, Docket No. 48. Shortly thereafter, BANA filed a Motion to Dismiss the Adversary Proceeding on the grounds that the Confirmation Order and underlying plan precluded Opperwall's state law claims. First AP, Docket No. 49.

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 7 of 36

As previously indicated, a substantial portion of the discussion at the hearings conducted prior to Opperwall filing the Amended Complaint focused on the nature of the claims he was asserting, i.e., were the claims entirely pre-petition (in which case it appeared that claim preclusion based on plan confirmation could apply), post-petition (in which case the claims *might not* have been subject to claim preclusion, and might or might not have been property of the estate), or some combination thereof. The uncertainty about these issues arose, in the Court's view, primarily from the exceedingly vague and conclusory factual statements set forth in the original complaint in the First AP. Thus the main purpose of the Amended Complaint, from the Court's perspective, was to provide greater specificity concerning the operative facts, and to clarify the timing of the facts that gave rise to the allegations that there had been an agreement between Opperwall and BANA concerning a loan modification, such that the Court could determine whether a defense based upon the preclusive effect of confirmation of the plan in the Bankruptcy Case would be available.

Unfortunately, in the Court's view, the Amended Complaint neither added significant detail nor provided needed clarity concerning whether any portion of Opperwall's claims might have been based upon post-petition actions by BANA. Based on the Court's understanding of the Amended Complaint, Opperwall was continuing to assert a pre-petition claim that was neither disposed of in his favor (i.e., by the creation of a loan modification via the confirmed plan) nor preserved in his confirmed plan.

Therefore, on December 16, 2015, the Court entered an Order Granting Motion to Dismiss the Adversary Proceeding on the basis of claim preclusion. First AP, Docket No. 65. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (finding a confirmed chapter 13 plan which was not appealed was final as to issues which could have been challenged prior to confirmation); *Lomas Mortgage USA v. Wiese*, 980 F.2d at 1284 (9th Cir. 1992), *vacated on other grounds*, 508 U.S. 958 (1993) ("An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing.").

Opperwall appealed the Court's Order Denying Motion to Abstain or Remand and the Court's Order Granting Motion to Dismiss the Adversary Proceeding to the District Court.[3] In his Appellant's Opening Brief, Opperwall asserted that the Bankruptcy Court erred when it denied his Motion to Abstain or Remand because the Court lacked any jurisdiction over the matter. District Court Appeal, case #3:16-cv-00106, Docket No. 12. Opperwall argued the Court erred in granting the Motion to Dismiss the Adversary Proceeding because the matter of whether a loan modification occurred pre-confirmation was actually res judicata against BANA due to BANA's failure to object to his proposed chapter 13 plan prior to entry of the Confirmation Order. In fact, much of his brief is devoted to his assertion that BANA's failure to object to the chapter 13 plan

---

[3]Because Opperwall appealed two Orders of the Court, the District Court assigned each appeal a separate case number, 3:16-cv-00106-JST and 3:16-cv-00134-JST. Because the documents in each case are identical, and the appeals were disposed of as a single case containing multiple arguments by both parties and the District Court, this memorandum refers to both appeals as one, and references the lower case number.

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 9 of 36

proved a loan modification was in place.  Further, he asserted the
Motion to Dismiss the Adversary Proceeding was untimely since BANA
had answered his original complaint prior to filing the Motion to
Dismiss the Adversary Proceeding.

On November 7, 2016, the District Court affirmed the Court's
Orders in a published opinion. *Opperwall v. Bank of Am., N.A.*, 561
B.R. 775 (N.D. Cal. 2016).  First, on the Order Denying Motion to
Abstain or Remand, the District Court made clear that the Court had
"related to" jurisdiction and did not err in denying remand to
California state court.  Second, on the Order Granting Motion to
Dismiss, the District Court enumerated the factors of claim
preclusion, and found this Court was correct in dismissing
Opperwall's complaint on the grounds that his attempted state court
suit, and any argument regarding a pre-confirmation loan
modification, was barred by claim preclusion.  Third, on the
timeliness of the Motion to Dismiss, the District Court affirmed
that the Motion to Dismiss was timely after this Court deemed
Opperwall's Amended Complaint to be the operative complaint in the
First AP prior to BANA's Motion to Dismiss.

Opperwall then appealed the District Court's decision to the
Ninth Circuit Court of Appeals, which also affirmed both Orders in
an unpublished two-page decision. *Opperwall v. Bank of Am., N.A.*,
727 F. App'x 329 (9th Cir. 2018).  The Ninth Circuit Court's
decision dealt directly with the issue of this Court's jurisdiction
in rejecting Opperwall's appeal of the Order Denying Motion to
Remand, finding that under *In re Wilshire Courtyard*, 729 F.3d 1279
(9th Cir. 2013), the Bankruptcy Court had related to jurisdiction

over Opperwall's complaint because there was a close nexus between Opperwall's Amended Complaint and Opperwall's chapter 13 plan. The Ninth Circuit also found that by his own pleadings to the District Court arguing the merits of claim preclusion against BANA, "Opperwall waived any challenge to the bankruptcy court's determination that the Chapter 13 plan has preclusive effect on all issues that he could have raised before confirmation, including the existence and scope of a loan modification." *Opperwall*, 727 F. App'x at 329-30 (citing *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005)).

**D. The Second Adversary Proceeding**

After the dismissal of the First AP, Opperwall completed his bankruptcy plan and received a discharge in May 2017. Bankruptcy Case, Docket No. 126. Just over a year later, in June 2018, Opperwall filed another state court complaint against BANA ("Second Complaint"), asserting the same basic operative facts and legal theories as his first state court complaint: that at some point (Opperwall fails to mention his Bankruptcy Case in his new complaint), BANA agreed to a loan modification, the terms of that loan modification coming into effect beginning in March 2012, one month after Opperwall's unmentioned bankruptcy filing. In his Second Complaint Opperwall added as defendants BANA's Chief Executor Officer Brian T. Moynihan, and the law firm and individual attorneys who represented BANA in the First AP: Severson & Werson, P.C., David E. Pinch, and Mark Joseph Kenney. The Second Complaint also asserted a spoliation claim regarding evidence BANA allegedly tampered with in the course of the First AP.

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 11 of 36

BANA removed the Second Complaint to this Court and promptly moved to dismiss on the basis of claim preclusion ("Motion to Dismiss"). Second AP, Docket No. 9. Opperwall filed a Cross-Motion by Plaintiff to Remand and or Abstain ("Motion to Remand/Abstain"), arguing that because Opperwall's chapter 13 plan had been completed, the Court lacked any jurisdiction to hear the matter. Second AP, Docket No. 13. Opperwall also filed a Plaintiff's Objections to Defendants' Rule 12(b)(6) Motion to Dismiss [Motion Not Timely Served, Court Lacks Jurisdiction] ("Objection"). Second AP, Docket No. 11. The Objection asserted that the Motion to Dismiss was defective due to improper service. The Objection further argued that the Court should treat any refiled Motion to Dismiss as a motion for summary judgment, and allow parties to conduct discovery before rendering a decision.

On August 8, 2018, the Court held a hearing, first addressing Opperwall's Objection. The Court found adequate notice was provided under the Court's Bankruptcy Local Rules and overruled the Objection. The Court then asked for further briefing regarding the Court's jurisdiction to hear BANA's Motion to Dismiss. The Court was concerned whether it had jurisdiction to determine matters in the Second AP, in light of the fact that the basis for the Court's jurisdiction was not evident from the matters asserted in the "well pleaded complaint," but arose solely from a defense set forth in the response to the complaint. See *Rivet v. Regents Bank*, 522 U.S. 470 (1998) (specifically discussing the limits of "arising under" jurisdiction in bankruptcy and the well-pleaded complaint rule, a rule in which federal subject matter jurisdiction must be evident

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 12 of
36

from the initial complaint and it is not sufficient to find federal jurisdiction for removal purposes only from affirmative defenses). In addition, the Court was concerned whether its jurisdiction to consider matters set forth in the Second AP would be affected by the fact that Opperwall had at this point completed his chapter 13 plan and received a discharge.  In posing these questions, the Court attempted to make clear that it had not concluded that it lacked jurisdiction to hear the Second AP, but was asking the parties for more thorough discussion of a gating jurisdictional question, using *Rivet* as a starting point for research purposes.

In that subsequent briefing, BANA argued that *Rivet* was not apposite, because the focused exclusively on the Bankruptcy Court's "arising under" jurisdiction -- which may be the most fundamental basis for federal court jurisdiction of bankruptcy cases and proceedings, but is not the sole source of jurisdiction over proceedings in a bankruptcy case.  Second AP, Docket No. 42. Rather, as BANA argued, in bankruptcy matters, federal courts also exercise "arising in" and "related to" jurisdiction, and BANA asserted that the matters set forth in the Second AP unquestionably invoked the Court's "related to" jurisdiction.  Further, BANA asserted that there is a "close nexus" between the Second AP, the First AP, and the Bankruptcy Case, since the outcome of both the First AP and the Second AP necessarily depend on the Court's interpretation of the confirmed plan from the Bankruptcy Case.

In his supplemental briefings, Opperwall never addressed "related to" jurisdiction, choosing to rely on *Rivet's* "arising

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 13 of 36

under" analysis as the sole basis why this Court did not have jurisdiction over the Second AP.  Second AP, Docket Nos. 44, 46.

## II.  DISCUSSION

After review and consideration, the Court concludes that the central question in this dispute is the Court's jurisdiction to decide matters set forth in the Second AP.  As will be explained below, although Opperwall filed a Motion to Remand/Abstain, the pleading did not in fact apply the statutory requirements relevant to abstention or remand -- rather that Motion merely set forth Opperwall's challenge to the Court's jurisdiction since he had received a discharge after plan completion.  Beyond that obvious "pleading" issue, the Motion to Remand/Abstain fails for two reasons.  First, for the reasons set forth in Section II.A, *infra*, the Court agrees that it has at least "related to" jurisdiction to determine the matters set forth in the Second AP.  Second, for the reasons set forth in Section II.B, *infra*, Ninth Circuit case law makes it abundantly clear that in the context of actions removed from state courts, the abstention doctrine and analysis simply does not apply.

Having made these determinations, the dispositions of the Motion to Dismiss and the Motion for Sanctions follow quite easily.

### A.  Jurisdiction

The Court has related to jurisdiction over the Second AP.  A bankruptcy court has jurisdiction over civil proceedings (1) arising under title 11, (2) arising in title 11, or (3) related to title 11.  28 U.S.C. § 1334(b).  In this case, as both the

-14-

District Court and the Ninth Circuit found in the First AP, this
Court maintains related to jurisdiction.

In *Wilshire Courtyard*, the Ninth Circuit affirmed "that a
close nexus exists between a post-confirmation matter and a closed
bankruptcy proceeding sufficient to support jurisdiction when the
matter affects the interpretation, implementation, consummation,
execution, or administration of the confirmed plan." *In re
Wilshire Courtyard*, 729 F.3d. at 1289 (internal quotations
omitted). In that case, a confirmed plan allowed for a portion of
debt to be forgiven. Post-confirmation, however, the California
Franchise Tax Board attempted to recharacterize certain discharged
debts as a disguised sale with resulting capital gains. The Ninth
Circuit Court of Appeals agreed that the bankruptcy court had
related to and ancillary jurisdiction to reopen the bankruptcy case
and resolve the dispute, because there was a close nexus between
the dispute and the confirmed plan, and that resolution of the
dispute required interpretation of the bankruptcy plan and
confirmation order.

Here, Opperwall, after completion of his chapter 13 plan, has
filed a state law complaint which essentially recharacterizes his
plan from one which was hopeful that a loan modification would be
obtained prior to confirmation, to one which, contrary to the
plan's language, already had a loan modification in place.
Resolution of this dispute necessarily requires interpretation of
the Confirmation Order, and the plan itself. A close nexus exists
between Opperwall's Second Complaint, which alleges that a loan
modification was obtained one month into Opperwall's bankruptcy in

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 15 of
36

March 2012, Opperwall's confirmed chapter 13 plan, the final version of which was proposed in April 2012, that "assumes, prior to confirmation, Debtor will obtain a loan modification agreement,"[4] and the Confirmation Order putting that plan into effect.

Because the Court maintains related to jurisdiction in this matter, the Court need not be concerned with the well-pleaded complaint rule. *See Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992) ("The 'well-pleaded complaint' rule applies only to statutory 'arising under' cases."). Though Opperwall's complaint in the Second AP appears to attempt to skirt this Court's jurisdiction through its failure to mention that Opperwall ever filed a petition for bankruptcy relief, he alleges facts which directly relate to his Bankruptcy Case, and the still operative Confirmation Order in that case.

This Court concludes that under the rule established by *Wilshire Courtyard*, there is a close nexus between the Second AP and Opperwall's Bankruptcy Case. Accordingly, the Court finds it has related-to jurisdiction to decide the Motion to Dismiss, the Motion to Remand/Abstain, and the Motion for Sanctions.

**B.  Abstention/Remand**

Opperwall's objection to BANA's Motion to Dismiss was brought as the Motion to Remand/Abstain. While the Court initially had questions regarding timeliness of the filing, it was allowed to continue forward after BANA filed a response.

---

[4]As noted in Section I.B, this Court found during BANA's Motion to Dismiss Case in 2012 that the plan itself did not create a loan modification.

While he argued for abstention or remand, the only point Opperwall explicitly argued in favor of either result was jurisdictional: that the Court entirely lacked jurisdiction to hear the complaint because Opperwall had completed his plan, and there was no longer an operative bankruptcy case. The Court rejects this argument as discussed in Section II.A. Opperwall's filings never addressed the factors necessary to find either mandatory or permissive abstention was appropriate. *See Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*, 384 B.R. 566, 570-72 (Bankr. N.D. Cal. 2008) (enumerating factors for determining whether mandatory or permissive abstention is appropriate). While Opperwall declined to address the issue of the Court's mandatory or permissive abstention, the Court noted on the record that it would be very disinclined to grant permissive abstention given the Court's extensive history with the facts of the case, and that the disposition of the Second AP appeared to turn entirely on an interpretation of orders entered in Opperwall's main bankruptcy proceeding and the First AP.

In addition to the problems caused by Opperwall's scant explanation for his own Motion, BANA's filings made clear the law of this Circuit is that the doctrines of remand and abstention are mutually exclusive, and given the disposition of the Second AP, the only question for the Court to consider was remand. Second AP, Docket No. 19. *See In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001); *see also TIG Ins. Co. v. Smolker*, 264 B.R. 661, 665 (Bankr. C.D. Cal. 2001) ("Sections 1334(c)(1) and 1334(c)(2) are inapplicable in actions that have been removed pursuant to 28 U.S.C. § 1452"). The

-17-

Court finds BANA's arguments on the matter persuasive, and for the reasons stated above found no reason to remand this matter to state court.

**C.  <u>Motion to Dismiss</u>**

Having found this Court has jurisdiction over the Second AP, and having been presented with no cognizable argument to remand the matter, the Court now turns to BANA's Motion to Dismiss.

BANA has asked the Court to take judicial notice of the First AP and the pleadings filed therein in deciding this Motion to Dismiss, as the proceedings are essentially the same.  Opperwall has argued against this request, stating the Second AP is a wholly different case because additional parties and claims have been added to his complaint, along with his chapter 13 plan having reached completion.  The Court sees no reason why it cannot take notice of its own prior actions and orders, and dismisses this case on the basis that (1) the Second AP is precluded by dismissal with prejudice of the First AP; and (2) the Second AP is precluded by the confirmation of the (now completed) chapter 13 plan.

Res judicata, or claim preclusion, applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Claim preclusion is a doctrine not of suspension, but of finality: "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Tahoe Reg'l Planning Agency*, 439 U.S. 322, 326, n.5 (1979).

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 18 of 36

1.   **The Second AP Is Precluded by this Court's Dismissal with Prejudice of the First AP**.

   a.   **There Is an Identity of Claims Between the First AP and the Second AP**.

Opperwall cannot avoid claim preclusion by asserting a litany of new grounds for recovery. "Identity of claims exists when two suits arise from the same transactional nucleus of facts. Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078.

The Second AP and the First AP share the same transactional nucleus of facts: in both cases Opperwall claims that he and BANA entered into a loan modification at some point prior to confirmation of his bankruptcy plan, he began making payments according to that loan modification in March 2012, and that BANA later breached the agreement.

Opperwall contends that because he was still making payments according to his bankruptcy plan during the pendency of the First AP, and the plan had since been completed prior to the commencement of the Second AP, that the nucleus of facts in this Second AP has somehow been transmuted into something entirely different for claim preclusion purposes. However, just as completion of the bankruptcy plan does not alter the Court's jurisdictional analysis, it does not change the underlying nucleus of operative facts between the First AP and Second AP for preclusion purposes, because the only relevant question is whether confirmation of Opperwall's bankruptcy plan, without either disposing of the plan modification issue in

his favor (i.e., by the plan having "created" a loan modification, an argument that every court to consider it has rejected) or having preserved the claim via a reservation, precludes later assertion of such claim.  And, as every court to consider the question has ruled, it does.  The fact that the plan was later completed changes nothing in this analysis.  Opperwall is, and always will be, precluded from asserting a claim against BANA based on his theory of a pre-confirmation loan modification.

That there is a spoliation "claim" tacked onto the complaint in the Second AP also makes no difference in finding an identity of claims between the First AP and the Second AP.  Because spoliation is not a cause of action under California law, but rather a remedy for proven wrongful acts taken during discovery, it is subject to a motion to dismiss for failure to state a cause of action.  *Cedars-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 17 (1998).  For similar reasons, assertion of such a legally insufficient and irrelevant "claim" cannot "change" the operative facts relevant to a determination of this matter.

### b. <u>There Is a Final Judgment on the Merits of the Second AP's Claims</u>.

This Court dismissed with prejudice the claims of the First AP.  "An involuntary dismissal generally acts as a judgment on the merits" for purposes of claim preclusion.  *In re Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997).  This Court's decision to dismiss the First AP with prejudice was affirmed on appeal by the District Court and by the Ninth Circuit.  *Opperwall v. Bank of Am., N.A.*, 727 F. App'x 329 (9th Cir. 2018); *Opperwall v. Bank of Am., N.A.*,

561 B.R. 775 (N.D. Cal. 2016), and Opperwall's requests for a
rehearing and a rehearing en banc were denied.  *Opperwall v. Bank
of Am., N.A.* 2018 BL 304821 (9th Cir. Aug. 23, 2018).

                        **c.    The Alleged Addition of Parties in the Second
AP Does Not Destroy Privity**.

     As to Opperwall and BANA, named parties in both actions, this
Court finds identity of parties for claim preclusion purposes
without need for further discussion.  Opperwall's addition of
BANA's Chief Executive Officer ("CEO") and the law firm and
attorneys who defended BANA in the First AP as defendants in the
Second AP fails to break the link of privity of parties between the
proceedings. "Even when parties are not identical, privity may
exist if there is substantial identity between parties, that is,
when there is sufficient commonality of interest."  *Tahoe-Sierra*,
322 F.3d at 1081 (internal quotations omitted).  Further, privity
is found between a corporate party and individually named agents of
the corporate party when the allegations against the individuals
"relate to actions taken in their official, rather than their
individual, capacities."  *Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th
Cir. 1996).

     Brian Moynihan is named in his individual capacity in the
Second AP, but the claim only includes actions he would have
undertaken as the CEO of BANA.  The Court finds sufficient
commonality of interest between the CEO of BANA, and BANA itself,
to establish privity for claim preclusion purposes.

     The Court notes that Opperwall's complaint does not allege
with any specificity any causes of action against Severson &

-21-

Werson, P.C., David Pinch, or Mark Kenney, aside apparently, from
the spoliation claim, which as noted above, is not a cognizable
cause of action, and must be dismissed under Bankruptcy Rule
7012(b)(6) in any event.  Even so, as other courts within this
Circuit have found, "when a law firm defendant appears in a
subsequent action by virtue of their activities as representative
of a party in a prior action, privity exists." *Hansen v. U.S.
Bank, N.A.*, 2015 WL 5190749 (D. Idaho).  While the Court finds no
need to find privity as to the Severson defendants based on
Opperwall's defective pleading, privity would also be found as to
the Severson defendants as the Court is forced to conclude, with no
further clarification from Opperwall, that they are named in this
action by virtue of their representation of BANA in the First AP.

**2.  <u>The Second AP Is Precluded by this Court's
Confirmation of Opperwall's Chapter 13 Plan</u>**.

Despite Opperwall's failure to mention he had ever filed for
bankruptcy relief in the past, the Second AP is precluded also by
this Court's Confirmation Order in Opperwall's Bankruptcy Case.
"An order confirming a Chapter 13 plan is res judicata as to all
justiciable issues which were or could have been decided at the
confirmation hearing."  *Lomas Mortgage USA v. Wiese*, 980 F.2d at
1284 (9th Cir. 1992).  Just as the Court found in the First AP,
Opperwall is again attempting to assert a claim that BANA has
breached a pre-petition loan modification that was barred by this
Court's confirmation of a chapter 13 plan -- which expressly did
not create, but merely contemplated, some future loan modification.
Opperwall failed to preserve any claim against BANA through an

-22-

express reservation of the claim in his chapter 13 plan, filing an objection to BANA's filed Proof of Claim, or filing an adversary proceeding asserting the claim against BANA. The doctrine of claim preclusion simply bars Opperwall from attempting to litigate claims he could have raised prior to confirmation of his chapter 13 plan.

That Opperwall's plan has since been completed and a discharge received does not nullify the preclusive effect of the plan. A confirmed chapter 13 plan permanently modifies the obligations between a debtor and creditor. 11 U.S.C. § 1327(a); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). Opperwall's version of bankruptcy, in which the effects of bankruptcy are only binding during the pendency of the case, is simply contrary to the purpose of the bankruptcy system, and antithetical to the theme of finality that is central to the doctrine of claim preclusion.

### D. Sanctions

BANA requests sanctions under the provisions of Rule 9011 in the amount of $13,246, comprised of attorneys' fees for filing the pleadings responding to the Second AP. BANA's request is premised on three theories: (a) assertion of the Second AP is not warranted by law, since it describes essentially the same facts as the First AP, which this Court dismissed, with prejudice, on claim preclusion grounds (and which disposition was affirmed by the District Court and the Ninth Circuit); (b) the Second AP lacks evidentiary support, such that assertion of the claims therein cannot have been made after a good faith inquiry regarding the legal and factual support thereof; and (c) under the facts and circumstances of this

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 23 of 36

matter, Opperwall is not asserting the Second AP for a proper purpose, but rather for the purpose of harassment.

Opperwall filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion for Sanctions under Rule 9011 ("Opposition to Motion for Sanctions"), asserting that (a) Rule 9011, and Federal Rule of Civil Procedure 11 from which it derives, do not apply to state court actions removed to a federal court, (b) the claims set forth in the Second AP are not frivolous, in support of which Opperwall attempts to characterize certain comments made by the Court at the August 8 hearing on the Motion to Dismiss as supporting the validity of the claims in the Second AP, and (c) Rule 9011 is not applicable, because the state court action that has been removed, asserts proper and viable and "unique" (i.e., not previously asserted) state court claims that should be tried to a jury in that forum. Second AP, Docket No. 35. For the reasons set forth below, the Court grants the Motion for Sanctions.

Rule 9011 reads, in pertinent part:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are reasonably based on a lack of information and belief.

-24-

Any attorney (or unrepresented filer) who files a pleading or asserts a position attests, either through the signing of the pleading or the assertion of a legal position, that he has investigated and satisfied himself that sufficient factual grounds and sufficient legal grounds exist for the positions asserted. Rule 9011(b). In assessing liability under Rule 9011, courts are directed to examine the matter under an objective standard of reasonableness measured by the actions of "a competent attorney admitted to practice before the involved court." *In re Blue Pine Grp.*, 457 B.R. 64 (9th Cir. BAP 2011) *(vacated in part for other reasons by In re Blue Pine Grp.*, 526 F. App'x 768 (9th Cir. 2013)) (*quoting In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991)).

The purpose of the Rule is to ensure the integrity of the judicial process, by rendering pleadings, etc., not based on valid factual and legal bases subject to sanctions, including an award of attorneys' fees to counsel who must oppose the defective pleadings. *Id.*

Because of the serious remedies imposed for a violation of Rule 9011, subsection (c) of the Rule requires that the party asserting a violation comply with safe harbor provisions that provide advance notice to respondents. Although the Court was initially concerned that BANA had not complied with this advance notice requirement, because the Court had not seen on the docket a declaration in support of the Motion with the form of warning cover letter that might typically accompany the advance service of the Motion, the Court is convinced after further review, that the

Motion was served with the requisite advance notice.  Second AP,

Docket No. 23.  And, in any event, Opperwall has not contended that

he was not provided the advance notice that the Rule requires.

## 1. **Rule 9011 Applies to Actions Removed from State Court**.

Opperwall spends most of his Opposition to Motion for

Sanctions arguing that Rule 9011 does not apply to actions

initially filed in state court and removed to federal court.

Opperwall cites the case *Hurd v. Ralph's Grocery Co.*, 824 F.2d 806,

808 (9th Cir. 1987) for the proposition that actions filed

initially in state court and removed to federal court simply do not

trigger the provisions of Rule 9011, because in such instances

there is no initiating pleading that was "filed" in federal court.

Opperwall further contends that, in any event, there can be no Rule

9011 violation where the respondent immediately requests that the

federal court abstain from hearing the removed action, or requests

that the federal court remand the action to state court.

BANA correctly notes, however, that the version of Rule 9011

that the court reviewed in *Hurd* is not the same version of the Rule

in effect today.  Rule 9011 was indeed amended in 1993 and is now

triggered by an attorney or an unrepresented party "presenting to

the court (whether by signing, filing, submitting or later

advocating) a petition, pleading, written motion or other paper."

Rule 9011(b).  It is thus no longer the case that Rule 9011 may be

triggered solely by the filing of a pleading in a federal court,

and the holding of *Hurd* that a state court action removed to

federal court will not invoke the provisions of Rule 9011 is simply

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 26 of
36

no longer applicable.  *Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997) (*overruled on other grounds by Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011)).

And, judged by the broader language of the current version of the Rule, which may be implicated by "signing, filing, submitting, or later advocating" a pleading or other paper lacking factual support or valid legal authority, there is little question but that Opperwall's actions in this matter would invoke Rule 9011, and require compliance with its requirements.  Opperwall asserts that he essentially took no action in this matter, but immediately requested that the Court either abstain or remand the matter back to state court, and that this case thus stands in stark contrast to *Buster*, cited above, in which the parties briefed and argued a motion for summary judgment.  However, Opperwall, via his Opposition to the Motion to Dismiss, and via his Motion for Abstention/Remand, has asserted throughout this stage of this litigation that his action was viable, presented "unique" claims compared to the First AP, and could only be decided by a jury in state court.  Such actions, manifested by numerous pleadings signed by Opperwall, obviously invoke both the "signing, filing [and] submitting" and the "later advocating" categories of activities that are subject to the Rule.  *Id.* at 1190, n.4.

Rule 9011 unquestionably applies to Opperwall's actions in this matter.

## 2. The Second AP Presents Claims That Are Not Warranted by Law and Are Legally Frivolous.

The filing of the Second AP violates the provisions of Rule 9011, for several reasons.

As an initial matter, the doctrine of claim preclusion applies to bar the assertion of the claims in the Second AP, just as it did to bar the claims in the First AP. As is set forth in greater detail in Section II.A, *supra*, there is no legally significant difference between the claims asserted in the First AP and the claims asserted in the Second AP. Both actions are based upon an alleged agreement between Opperwall and BANA to modify the terms of Opperwall's secured debt to BANA, prior to the commencement of Opperwall's Bankruptcy Case. That the Second AP was brought after the completion of Opperwall's chapter 13 plan does not alter the claim preclusive effect of plan confirmation in Opperwall's chapter 13 case. As the Court has noted, claim preclusion is a doctrine of finality, not suspension. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (finding "the very purpose" of claim preclusion is to protect the finality of judgments). If claim preclusion exists, it bars the assertion of claims that were or could have been brought in the prior action, and it does not lapse because of the passage of time or the completion of chapter 13 plans. This point is simply not subject to serious debate, and Opperwall has provided no competent authority to suggest that claim preclusion would not apply to the Second AP.

Nor does Opperwall's head-in-the-sand studious avoidance of even mentioning his Bankruptcy Case in the complaint commencing the

Second AP, or his allegation that the violation of the alleged agreement to modify the loan first occurred on a date that happens to have been after the date of completion of his purposefully not-identified chapter 13 plan, change the result -- though it is indicative of Opperwall's desperation to avoid the obvious legal conclusion, i.e., that the Second AP is just as claim barred as the First AP.

Nor for the reasons stated in the discussion of the Motion to Dismiss are any of the other alleged differences between the First AP and the Second AP, i.e., adding the CEO of BANA, and the law firm that represented BANA in the First AP as well as two lawyers who then worked at that law firm as defendants, and attempting to state a cause of action for "spoliation" of evidence, availing to Opperwall; such "differences" are simply not legally significant in the application of the doctrine of claim preclusion. The claims in the First AP and the Second AP are, for claim preclusion purposes, the same. Further, this Court has already ruled that any action based upon an alleged pre-confirmation agreement would be barred by claim preclusion. Assertion of the claims in the Second AP is not merely barred by confirmation of the chapter 13 plan, it is explicitly barred by an Order of this Court, the effect of which Opperwall is only too well aware, having attempted, for years, to have that Order reversed. Under the circumstances presented it is inconceivable that Opperwall could offer any factual or legal support for the assertion that the claims in the Second AP were not subject to preclusion, and he has totally failed to do so. The assertion of a claim that the movant knows is barred, without any

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 29 of 36

excusing circumstances, is by definition made without an adequate factual or legal basis. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988).

### 3. This Court's Comments During the August 8 Hearing on the Motion to Dismiss Do Not Indicate That the Claims in the Second AP Were Not Frivolous.

Opperwall attempts to argue that the fact that this Court engaged in a fairly lengthy colloquy with counsel during the August 8 hearing on this matter negates the possibility that assertion of the Second AP was frivolous. But Opperwall's recollection of the dialogue between the Court and counsel during that hearing is inaccurate, and fails to take account of the context of the Court's comments.

The Court did engage counsel in a colloquy concerning issues related to the Court's jurisdiction over the removed Second AP and whether remand might be required. But the Court went to great pains to make clear that its concerns were not a "ruling," but merely a request that the parties consider, and brief, the question whether the Supreme Court case *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998), posed any obstacle to the Court's exercise of jurisdiction over the Second AP, in light of the fact that, because Opperwall avoided mentioning his Bankruptcy Case in the complaint, the claims in that suit did not indicate a basis for federal jurisdiction. At the same time, the Court expressly noted that a number of other cases post-*Rivet* had held that *Rivet* applied only to limit the exercise of this Court's "arising under" jurisdiction, and did not affect the Court's exercise of "related to" jurisdiction. The Court also expressly noted that the Ninth

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 30 of 36

Circuit case of *In re Wilshire Courtyard*, 729 F.3d 1279 (9th Cir. 2013) had supplied a basis for the Court's "related to" jurisdiction over the First AP; however, the Court was concerned that the completion of the chapter 13 plan, and the termination of Opperwall's Bankruptcy Case, might lessen the possibility that there would be a "close nexus" between the confirmed plan in Opperwall's main chapter 13 case and the Second AP. The Court therefore asked the parties, out of what was probably an excess of caution, to brief directly the question of this Court's jurisdiction over the removed Second AP.

The Court having reviewed the parties' further briefing of the issue (and in particular BANA's supplemental Brief/Memorandum in Support of Court's Jurisdiction, Second AP, Docket No. 42), the Court was satisfied that, pursuant to numerous authorities cited by BANA, it had "related to" jurisdiction over the Second AP, for the same reasons that it had such jurisdiction over the First AP: that there was a close nexus between the confirmation of the chapter 13 plan and the assertion of the claims in the Second AP. And, as set forth in BANA's brief, and as became apparent to the Court upon a re-reading of the Ninth Circuit's opinion in *Wilshire Courtyard*, that case stands for the proposition that the existence of a "close nexus" between a confirmed plan and a dispute about the effect of confirmation does **not** depend upon whether the Debtor is still performing under the plan. *Id.* at 1287. Rather the close nexus need not depend on a functional analysis based on the pendency of the plan, but continues, based upon the relationship of the issues implicated in confirmation and the current dispute. *Id.*

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 31 of 36

1  And in any event, the Court was careful to distinguish the

2  issue of which court might have jurisdiction to rule on the Motion

3  to Dismiss, from the **merits** of the Motion to Dismiss.  Indeed, the

4  Court remarked on several occasions during the argument that the

5  merits of the Motion to Dismiss seemed quite obvious to the Court:

6  claim preclusion should apply to bar the Second AP for the same

7  reason that it had applied to the First AP.  The Court said nothing

8  to indicate that it was uncertain whether claim preclusion should

9  apply to the Second AP.  Opperwall's argument that this Court

10  apparently viewed his arguments as warranted by law and non-

11  frivolous is simply not accurate.

12          **4.   Under an Objective Review of the Facts and
                Circumstances, the Court Must Conclude that the**
13          **Second AP was Brought for an Improper Purpose.**

14      Rule 9011(b) prohibits the filing or submitting of any

15  pleading, or later advocating any position, for an improper

16  purpose, including to harass or to cause unnecessary delay or

17  needless increase in the cost of litigation.  The Court is to

18  determine the applicability of this provision based on an

19  assessment of whether a party's pleading or position is objectively

20  reasonable, as measured by what would be expected of a competent

21  attorney admitted to practice before the court.  *In re Blue Pine*

22  *Grp.*, 457 B.R. 64 (9th Cir. BAP 2011).

23      Considering the circumstances of this matter, including the

24  fact that, while appearing pro se, Opperwall is a licensed

25  attorney, and in particular the extensive prior litigation with

26  respect to an essentially identical series of claims, that

27  established beyond cavil that the type claims asserted in the

28

-32-

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 32 of
36

Second AP would be barred by claim preclusion, the Court has little choice but to conclude that the Second AP was not brought for a proper purpose. As the Court has noted in several instances in this Memorandum, this is a rare case in which claim preclusion appears to apply on two levels: first, because the claims asserted in the Second AP are clearly based upon a pre-petition agreement, and they are barred by confirmation of the chapter 13 plan in the main case; and second because the Court has already expressly ruled on the very same issue in this very case. There simply cannot be any rational and genuine argument, with this background, that a party could have an objective belief, grounded in facts and with a valid legal basis, that the assertion of the claims in the Second AP was not barred. And the fact that Opperwall apparently sought to evade the review of this Court by filing his action in state court and neglecting even to mention in the Second AP that he had been a debtor in a bankruptcy case simply reinforces the Court's belief that the Second AP could not have been filed for a proper purpose.

Based on the foregoing analysis, which provides ample basis to dispose of these matters, the Court will decline to reach the issues of issue preclusion and lack of a factual basis for the claims asserted in the Second AP, which were also asserted in the Motion for Sanctions.

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 33 of 36

**5.** **The Court Is Inclined to Award Sanctions in the Form of Attorneys' Fees as Requested by BANA but Will Permit Opperwall to File a Brief Addressing the Amount of Fees to be Awarded.**

During the September 5 hearing on these matters, the Court questioned whether BANA had provided sufficient information to support its sanction request of $13,246 in attorneys' fees for filing the Motion to Dismiss and the Motion for Sanctions, and for opposing the Motion to Abstain/Remand. The Court indicated that it would review the pleadings supplied by BANA and if it found the pleadings insufficient to support the Motion for Sanctions it would request further briefing or factual support for that request.

The Court, having now reviewed again the Motion for Sanctions and accompanying declarations, is convinced that those pleadings supply ample support for the fees requested. In particular, the Court believes that the hourly rate requested with respect to the fees incurred, $375, is quite reasonable in light of the level of experience and sophistication of BANA's counsel in this matter. Similarly, the Court believes that the overall time spent on these matters, approximately 35 hours in total, is reasonable in light of the work required and the time entries provided demonstrate that the fee request appears to be comprised of entries for services that were actually and necessarily performed in connection with BANA's efforts to resist prosecution of the Second AP.

Moreover, the Court cannot help but note that when offered opportunity during oral argument to object to the amount of fees sought by BANA as a sanction against him, Opperwall essentially

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 34 of
36

demurred, for reasons that were not immediately apparent to the Court.

Nonetheless, because the Court indicated some uncertainty as to the completeness of BANA's presentation on fees, thereby perhaps creating the impression that Opperwall might have another opportunity to oppose the amount of fees sought in the Motion for Sanctions, the Court will delay entering an order granting the Motion for Sanctions for ten (10) days, to permit Opperwall to file an opposition to the amount of fees requested (but not to whether the Motion for Sanctions was well taken -- it was). The Court will then rule on the amount of fees to be awarded pursuant to the Motion for Sanctions, without further hearing.

For the sake of judicial economy only, the Court will delay entering orders granting the Motion to Dismiss and denying the Motion to Remand/Abstain for ten (10) days, and enter an order on all Motions on the same day. Prior thereto, the Court will not entertain any pleadings regarding any motion other than a potential filing from Opperwall on the narrow question of the amount of fees requested by BANA.

**\*END OF MEMORANDUM\***

Case: 18-04090   Doc# 57   Filed: 11/21/18   Entered: 11/21/18 13:56:58   Page 35 of
36

1          **COURT SERVICE LIST**
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-36-

Case: 18-04090    Doc# 57    Filed: 11/21/18    Entered: 11/21/18 13:56:58    Page 36 of 36